Olivia Sanders  SBN 208266
Law Offices of Olivia Sanders
400 Corporate Pointe, Suite 560
Culver City, CA 90230
(310) 641-9001; (310) 641-9007 (Facsimile)
Email: sanderslaw@sbcglobal.net
Attorney for Plaintiff
Kathleen A. Melez, M.D.

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| KATHLEEN A. MELEZ, M.D.<br><br>Plaintiff<br><br>v.<br><br>KAISER FOUNDATION HOSPITALS, INC., a California Corporation;<br>KAISER FOUNDATION HEALTH PLAN, a California Corporation;<br>SOUTHERN CALIFORNIA PERMANENTE MEDICAL GROUP, a business, form unknown;<br>and DOES 1-50 inclusive,<br><br>Defendants. | Case No.:  2:14-cv-08772-CAS-VBK<br><br>PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO COMPEL ARBITRATION AND STAY PROCEEDINGS;<br>PLAINTIFF'S REQUEST TO STAY PROCEEDINGS.<br>[Filed concurrently with Request For Judicial Notice; Declaration of Olivia Sanders; Declaration of Kathleen A. Melez; [Proposed] Order Denying Motion.)<br><br>Hearing Date: March 2, 2015<br>Time: 10:00 a.m.<br>Judge: Hon. Christina A. Snyder<br>Courtroom: 5 – 2nd Floor<br><br>Action Filed:  November 12, 2014<br>Trial Date:  None Set<br>Jury Trial Demanded |

-1-

TO THE COURT, ALL PARTIES AND ATTORNEYS OF RECORD:

Plaintiff, Kathleen Melez, M.D., submits this memorandum in support of her opposition to Motion to Compel Arbitration ("Motion") filed by Defendants: Southern California Permanente Medical Group ("SCPMG"); Kaiser Foundation Health Plan, Inc.; and Kaiser Foundation Hospitals; (collectively "Defendants").

## I. INTRODUCTION

Defendants' arbitration agreement fails in a basic, fundamental concept of contract formation - it is not a fully integrated and complete agreement. While the Dispute Resolution Procedure ("DRP") approved by Defendants' Board of Directors on May 18, 2006 refers to American Arbitration Association procedures, those procedures are not included in the Dispute Resolution Procedure document. This failure to include the information forces the parties to go outside the document to fully understand its terms. As to the actual AAA procedures, while Defendant asserts there has been no change in the DRP since 2006, the AAA procedures attached as Exhibit E to Defendants' Motion shows, "amended and effective November 1, 2009." The AAA fee schedule was amended and effective November 2014. This requires that the employee not only keep track of changes made to the DRP, but also another document, the AAA procedures.

The parties were not in an equal bargaining position. Melez is an employee of Defendants. She was not given an opportunity to negotiate its terms, object to its terms or reject the terms of its arbitration agreement. At the time that Defendants presented the Arbitration Agreement, Dr. Melez had been employed with Defendants for 16 years. She was told that she had two choices: sign; or lose her job. [Melez Decl. ¶ 9.]

In order for the parties to compel arbitration there must be a valid agreement to arbitrate. The validity of an arbitration agreement is determined by application of state law contract principles and defenses that are specific to arbitration. Defendants' arbitration agreement required consent to future unilateral

-2-

**PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO COMPEL ARBITRATION AND STAY PROCEEDINGS**
*Melez v Kaiser, et al.*                                                              2:14-cv-08772-CAS-VBK

1  changes "from time to time" by the SCPMG Board of Directors. There is no
2  specific time and no procedure to notice changes to the employees.
3      What Defendants refer to as the Dispute Resolution Procedure ("DRP") has
4  no individual page numbering to show that it is an integrated document. [Melez
5  Decl. ¶ 14.] One page at the end of the document has one paragraph which is in a
6  different font size and no indicia of when it was created. The paragraph on this
7  page states:
8      "Physician's job duties constitute an activity that affects
9  commerce among the states, making Physician's agreement with
10 SCPMG a transaction involving commerce among the states.
11 This DRP may be enforced in accordance with the provisions of
12 the Federal Arbitration Act, 9 U.S.C. Sec. 1, or the provisions of
13 any applicable state arbitration statute. If any provision of this
14 DRP is adjudged to be void or otherwise unenforceable, in whole
15 or in part, that adjudication shall not affect the validity of the
16 remainder of the DRP."
17     Plaintiff's signature page, another stand-alone document, is also in a
18 different font size and on a separate page. [Melez Decl. ¶ 14.]
19     The Federal Act provides for enforcement of arbitration provisions in any
20 contract "evidencing a transaction involving commerce." [9 USC § 2 (emphasis
21 added); see *Rent-A-Center, West, Inc. v. Jackson* (2010) US, 130 S.Ct. 2772, 2776;
22 see also *Rogers v. Royal Caribbean Cruise Line* (9th Cir. 2008) 547 F3d 1148,
23 1153–1154.] Involving commerce is functionally equivalent to "affecting
24 commerce" and "signals an intent to exercise Congress' commerce power to the
25 full." [*Allied-Bruce Terminix Cos., Inc. v. Dobson* (1995) 513 US 265, 277, 115
26 S.Ct. 834, 841 (emphasis added).]
27     Defendant broadly redefines interstate commerce to include patients who
28 may come from out of state and medical supplies that may come from out of state.

**PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO COMPEL ARBITRATION AND STAY PROCEEDINGS**

*Melez v Kaiser, et al.*     2:14-cv-08772-CAS-VBK

This definition is not supported by any case law or specific statute. Plaintiff's claims fall within the jurisdiction of this Court. The Motion should be denied and Plaintiff allowed to proceed in a judicial forum.

## II. STATEMENT OF FACTS

Dr. Melez, a pediatrician certified by the American Board of Pediatrics, worked as a *per diem* physician for Defendants from 1991 until her termination in July 2012. (Melez Decl. ¶ 2.) In or about April 2012, Plaintiff was notified that she would not be provided a panel of patients because she was over the age of 65. (Melez Decl. ¶¶ 10-11.) Defendants' partnership agreement provides for mandatory retirement at age 65. As per diem employee, Melez was not classified as a partner, and therefore, not subject to the terms of the partnership agreement. Melez was not provided with the partnership agreement at any time during her employment. (Melez Decl ¶ 4.) Protesting her termination based on the partnership agreement terms, Melez reminded Defendants that she was not a partner and, therefore, not subject to the partnership agreement. In the following months, Melez's hours were reduced until as of July 2012, she was no longer working at all. (Melez Decl.¶¶ 10-11.)

Defendants' dispute resolution procedure was not approved until May 18, 2006, which is 16 years after Melez started her employment with Defendants. If she wanted to continue working for Defendants, she was given two choices: sign the document as presented; or be terminated. (Melez Decl.¶ 9.).

Defendant acknowledges the fact their DRP "is not meant to prohibit the notification of an administrative agency of the federal or state government by the filing of a charge or complaint which alleges discrimination." That is exactly what Melez did - she filed complaints with the Equal Employment Opportunity Commission ("EEOC"). Melez's complaints arise from Defendants' discriminatory acts, including and not limited to, termination of her employment based on her age. (Complaint ¶¶ 7-9, 31, 51, 53, and 61.) The filing of her EEOC

-4-

charges provided notification to Defendants that she disagreed with their decision to terminate her employment.

Defendants assert that Dr. Melez's Employment Contract with Southern California Permanente Medical Group ("SCPMG") references the DRP and that "Physician and SCPMG agree to follow the Dispute Resolution Procedure, and the [SCPMG] Rules and Regulations." Melez signed a document titled Per Diem Employment Contract in July 2007. Since Defendant reserved the right to make unilateral changes and failed to assume responsibility for notification of such changes, Melez had no way of knowing whether or not any changes had been made. While the Per Diem Physician Employment Contract refers to the DRP, unlike the partnership agreement, it fails to include the terms of the DRP.

When Defendant asserts that Melez signed the DRP in 2007, this is disingenuous at best. She signed the Per Diem Physician Employment Contract. The DRP was not presented to Plaintiff in 2007. As Defendant acknowledges, Melez signed an employment agreement that referred to, but did not include, the DRP. (Melez Decl. ¶ 5.)

## III. LEGAL ARGUMENT

A. When, as in This Case, the Arbitration Agreement Does Not Meet the Armendariz Standard, It Is Unconscionable, and Cannot Be Severed, It Is Void In Its Entirety

    1. Standards for Determining the Enforceability of Arbitration Agreements

While California law favors the enforcement of arbitration agreements pursuant to general contract law principles, courts may nevertheless still invalidate an otherwise valid arbitration agreement when the agreement contains provisions that are unconscionable or contrary to public policy. *Armendariz v. Foundation Health Psychcare Services, Inc.* (2000) 24 Cal.4th 83, 99. An arbitration agreement must be enforced on the basis of state law standards that apply to

contracts in general [citation]." [*Engalla v. Permanente Medical Group, Inc.* (1997) 15 Cal.4th 951, 971–972 [64 Cal. Rptr. 2d 843, 938 P.2d 903]; accord, *Armendariz*, supra, 24 Cal.4th at p. 97; *Abramson v. Juniper Networks, Inc.*, 115 Cal. App. 4th 638, 651, 9 Cal. Rptr. 3d 422, 432, (Cal. App. 6th Dist. 2004).]

Similarly, contractual arbitration is only favored when the parties voluntarily agree to submit their disputes for resolution in a non-judicial forum. *Abramson v. Juniper Networks, Inc.* (2004) 115 Cal.App.4th 638, 650.

Courts engage in a three-step process when evaluating arbitration agreements. The first step is to identify whether the agreement implicates public or private rights. *Abramson*, supra, 115 Cal.App.4th at 651-652. Public rights are those that affect society at large rather than the individual - like, for example, discrimination and retaliation claims under the Age Discrimination in Employment Act ("ADEA") and California Fair Employment and Housing Act ("FEHA"). [*Little v. Auto Stiegler, Inc.* (2003) 29 Cal.4th 1064, 1077.] A law established for a public reason cannot be contravened by a private agreement. *Armendariz*, supra, 24 Cal.4th at 100.

When a plaintiff's claims arise from an unwaivable public right, the second step in the inquiry is to apply the *Armendariz* "five minimum requirements." As noted by the Abramson Court, "[w]here the plaintiff's claims arise from unwaivable public rights, whether statutory or nonstatutory, the arbitration agreement must satisfy the minimum requirements set forth in Armendariz." *Abramson*, supra, 115 Cal.App.4th at 652. These five minimum requirements are used to ensure that mandatory arbitration agreements are not used to curtail an employee's unwaivable public rights. *Id.*; see also *Armendariz*, supra, 24 Cal.4th at 100 ("arbitration agreements that encompass unwaivable statutory rights [like claims arising from FEHA violations] must be subject to particular scrutiny."); *Little*, supra, 29 Cal.4th at 1079 (extending *Armendariz* to nonstatutory, common law actions alleging wrongful employment termination in violation of public

-6-

**PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO COMPEL ARBITRATION AND STAY PROCEEDINGS**
*Melez v Kaiser, et al.*                    2:14-cv-08772-CAS-VBK

policy).

Under the *Armendariz* requirements inquiry, arbitration agreements in the employer-employee context must provide for (i) neutral arbitrators, (ii) more than minimal discovery, (iii) a written award, (iv) all types of relief that would otherwise be available in Court, and (v) no additional costs for the employee beyond what the employee would incur if he or she were bringing the claim in Court. *Armendariz*, supra, 24 Cal.4th at 102, 110-111. However, even after a showing that the arbitration agreement satisfies the Armendariz requirements, an agreement to arbitrate public claims must also still be conscionable. [*Abramson*, supra, 115 Cal.App.4th at 652.] Agreements to arbitrate may be invalidated if they are found to be unconscionable. [Cal. Civ. Code § 1670.5(a); *Armendariz*, supra, 24 Cal.4th at 113-114.] The doctrine of unconscionability contains two components: procedural unconscionability; and substantive unconscionability. [*Armendariz*, supra, 24 Cal.4th at 113-114.]

Finally, if the Court finds that the arbitration agreement or its provisions fail either of the above standards, the third step is to determine whether the offending provisions can be severed from the agreement or whether the provisions so taint the agreement as to render it void in its entirety. *Id.* at 124-125. Thus, "[t]he overarching inquiry is whether " 'the interests of justice . . . would be furthered' " by severance." *Id.* (Citations omitted.) But "Courts must have the capacity to cure the unlawful contract through severance or restriction of the offending clause, which . . . is not invariably the case." *Id.* (Emphasis in original.)

B.   Procedural and Substantive Unconscionability Invalidates the Arbitration Agreement.

   1.   Melez's Public Rights Claims are Both Statutory and Non-Statutory.

Melez's complaint alleges causes of action for violation of Federal (Equal Employment Opportunity Commission) and California Department of Fair

-7-

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO COMPEL
ARBITRATION AND STAY PROCEEDINGS
*Melez v Kaiser, et al.*                                   2:14-cv-08772-CAS-VBK

Employment and Housing anti-discrimination clauses. She also alleges wrongful termination in violation of public policy. Because she invokes both statutory and non-statutory claims, the DRP arbitration provisions must comply with the minimum requirements set forth in *Armendariz*.

In July 2014, President Obama signed Executive Order 113673, which gives recognition to the fact that employment disputes should be decided in a judicial forum and not in arbitration. Government contractors are required to provide information on a history of unfavorable decisions in matters involving key labor laws, including the Age Discrimination in Employment Act. Plaintiff's complaint is based on the ADEA (Request for Judicial Notice, and Exhibit 1 thereto); Complaint at page 2:9-12.)

    2.    **Defendants' Arbitration Agreement Is Procedurally Unconscionable**

Procedural unconscionability concerns the manner in which the arbitration agreement was negotiated and the circumstances of the parties at that time. [*Abramson*, supra, 115 Cal.App.4th at 656, (citing *Kinney v. United HealthCare Services, Inc.* (1999) 70 Cal.App.4th 1322, 1329.] The procedural element generally takes the form of a contract of adhesion (*Fitz v. NCR Corp*, 118 Cal.App.4th 702, 722; 13 Cal. Rptr. 3d 88, 90 (Cal. App. 4th Dist. 2004), and the relevant factors are "oppression" and "surprise." [*Abramson*, supra, 115 Cal.App.4th at 656.] Even if a party is aware of some of the contractual terms, procedural unconscionability may still be found. [*Fitz*, supra, 118 Cal.App.4th at 722.] Contrary to Defendants' assertions, requiring employees to agree to arbitration as a condition of employment, or continued employment, does constitute procedural unconscionability. [*Fitz*, supra, 118 Cal.App.4th at 721-722 (citing *Kinney v. United HealthCare Services, Inc.* (1999) 70 Cal.App.4th 1322); Melez Declaration ¶ 9] After 16 years of employment it would be difficult for any employee,regardless of their education and background,to be summarily

terminated for failing to sign an arbitration agreement.

     Defendant's reliance on *Gilmore v Interstate/Johnson Lane Corp.*, 500 U.S. 20 (1991), is misplaced. *Gilmore* involved the interplay of the New York Stock Exchange and the Federal Arbitration Act rules. Gilmore was required by his employer to register with the New York Stock Exchange and, as part of his NYSE registration, agree to arbitration of his claims. The agreement to arbitrate was not part of an employment contract. Another difference between Melez and Gilmore is that the claim in Gilmore was based entirely on a federal statute. Melez's claims are based on both state and federal statutes. Gilmore is distinguished by the Ninth Circuit from cases involving state statutes, such as the present action. [See *Coneff v. AT&T Corp.*, 673 F.3d 1155, 1159 n.2 (9th Cir. 2012); *Garcia v. Dell, Inc.*, 905 F. Supp. 2d 1174, 1179, 2012 U.S. Dist. LEXIS 168204, 11, (S.D. Cal. 2012).]

     Melez had been an employee of SCPMG for 16 years when she was ordered to sign an arbitration agreement. Defendant, in its motion, and properly so, does not assert that an arbitration agreement was a condition of employment when Melez was hired in 1991. An assertion that Melez has other employment options fails to address the issue of oppression and surprise inherent in forcing an arbitration agreement on a long-term employee. [Defendants' Motion at page 10:14-19.]

     3.    Failure To Provide AAA Rules And Regulations Is Procedurally and Substantively Unconscionable.

     Defendant concedes that Melez was not provided with the AAA rules. [Motion at page 11, fn. 1.] Neither the DRP nor the Per Diem Physician Employment Contract included the terms of the AAA rules. Melez was not a partner physician and never received the partnership agreement. [Melez Decl ¶ 4; Defendants' Motion to Compel at Exhibit A.]

     Defendant cites *Peng v. First Republic Bank*, 219 Cal. App. 4th 1462, 1468 (2013) in support of its position that the arbitration agreement was not procedurally

unconscionable. The Central District decision in *Poublon v. C.H. Robinson Co.*, 2015 U.S. Dist. LEXIS 6881, 12-13 (C.D. Cal. Jan. 12, 2015) found this very argument unpersuasive. The failure to attach the arbitration rules could be a factor in support of a finding of procedural unconscionability." *Lane v. Francis Capital Management LLC*, 224 Cal. App. 4th 676 224 Cal. App. 4th 676, 690, 168 Cal. Rptr. 3d 800 (2014). *Trivedi* and other cases holding that a failure to attach arbitration rules increased the degree of procedural unconscionability of adhesive contracts. [*Trivedi v. Curexo Technology Corp.* (2010) 189 Cal.App.4th 387, 393 [116 Cal. Rptr. 3d 804] cited in *Lane v. Francis Capital Management LLC*, 224 Cal. App. 4th 676, 690, 168 Cal. Rptr. 3d 800, 811 (Cal. App. 2d Dist. 2014).]

     Defendants' other cited case similarly held that "failure to attach the AAA rules, standing alone, is insufficient grounds to support a finding of procedural unconscionability," but acknowledged cases holding that a failure to attach arbitration rules increases the procedural unconscionability of an adhesive contract. [*Peng v. First Republic Bank*, 219 Cal. App. 4th 1462, 1470-72, 162 Cal. Rptr. 3d 545 (2013).]

     Requiring the employee to determine when and which rules apply to the DRP requires Melez to go outside the DRP. It also requires her to analyze multiple documents to determine which may or may not control. According to the DRP, "The procedures to be followed are those set forth in the dispute resolution rules of the AAA, except to the extent those rules differ from those set forth in this DRP, in which case this DRP controls."

         a.    Unilateral Modification of Contract Is an Additional Element of Surprise.

     Defendants have pointed to no contractual limitation on Defendants' ability to unilaterally modify the Dispute Resolution Procedures, which adds an additional element of surprise. While asserting that there have been no changes to their DRP since 2006, Defendant fails to address the fact that the

-10-

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO COMPEL
ARBITRATION AND STAY PROCEEDINGS
*Melez v Kaiser, et al.*                      2:14-cv-08772-CAS-VBK

American Arbitration Association Rules were amended and effective November 1, 2009 and the associated fee schedule was amended and effective November 2014. (See Exhibit E to the Motion to Compel; page 206/257). This raises a question about the statement contained in the Declaration of Douglas J. Killion, M.D. [Motion to Compel Arbitration at page 2 ¶ 7 (page 26/256)]. If, as Defendants contend, they are incorporating the AAA rules, then this information could constitute a change to the DRP. Given that the AAA rules changed in 2009, there is nothing to indicate that Melez was provided notification of the changes.

A unilateral modification provision in an adhesive contract was ***deemed*** unconscionable because it "proscribe[d] an employee's ability to consider and negotiate the terms of her contract." [*Ramirez-Baker v. Beazer Homes, Inc.*, 636 F. Supp. 2d 1008.]

    b. Discovery Limitations Are Substantively Unconconscionable.

    According to the terms of the DRP pre-hearing discovery, each party has "The right to serve on the other party one set of interrogatories in a form consistent with Rule 33 of the Federal Rules of Civil Procedure, which shall be limited to twenty-five (25) questions (including sub-parts, which shall be counted separately); (ii) The right to serve on the other party one set of document requests in a form consistent with Rule 34 of the Federal Rules of Civil Procedure, which shall be limited to twenty-five (25) requests (including subparts, which shall be counted separately); (iii) The right to conduct up four (4) seven-hour days of depositions in total of witnesses or the parties in accordance with the procedures set forth in Rule 30 of that Federal Rules of Civil Procedure." [Melez Decl ¶ 14 and Exhibit 1 thereto.]

The Fourth Appellate District in California affirmed a trial Court's order denying a Motion to Compel Arbitration by United HealthCare Services, Inc. because these discovery limitations (one interrogatory for identification of

-11-

potential witnesses only, twenty-five document requests, and two eight-hour depositions) were inadequate and substantively unconscionable. [*Kinny v. United HeathCare Services, Inc., et al.* (1999) 70 Cal.App.4th 1322, 1326, 1332 - "The unconscionable nature of the unilateral arbitral obligation is heightened by certain other terms of United's arbitration policy. Given that United is presumably in possession of the vast majority of evidence that would be relevant to employment-related claims against it, the limitations on discovery, although equally applicable to both parties, work to curtail the employee's ability to substantiate any claim against United." *Id.* at 1332.

The *Kinny* Court held that the terms of the arbitration agreement "were so unconscionable as to preclude its enforcement[,] [and because] the employee had no opportunity to negotiate regarding the terms of the agreement, the agreement was procedurally unconscionable. Also, because the arbitration obligation was essentially unilateral, the agreement was substantively unconscionable, given the basic and substantial nature of the rights waived by the employee in submitting to the agreement, including the right to a jury and to an appeal." *Id.*

Melez is in the same position as the plaintiff in *Kinney*.

        c.     Exemptions Are Unconscionable.

The DRP exempts a judicial action by either party for a temporary restraining order or a preliminary injunction to preserve the status quo pending arbitration; (iii) any report to a law enforcement agency regarding conduct believed to be a crime; and (iv) any report to a professional board of the State of California required by law. [Melez Decl., Exhibit 1). The unconscionability of such a provision is beyond reasonable dispute. This exemption has been found to be the most common actions brought by employers against employees. [See *Grabowski*, 817 F. Supp. 2d at 1173-74 (finding the same provision unconscionable.]

/ / /

-12-

**PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO COMPEL ARBITRATION AND STAY PROCEEDINGS**

*Melez v Kaiser, et al.*                      2:14-cv-08772-CAS-VBK

         d.     Confidentiality Provision is Substantively Unconscionable.

All evidence discovered or submitted at the hearing is confidential and may not be disclosed, except pursuant to court order. What appears to a be a facially neutral confidentiality provision unfairly favors defendants by (1) allowing defendants to learn as "repeat players" in the arbitration process, while preventing employees from learning from similar prior cases, and (2) preventing plaintiff from sharing evidence with other claimants. The Ninth Circuit has found confidentiality provisions unconscionable for these reasons. [See *Pokorny*, 601 F.3d at 1002 (finding a confidentiality provision unconscionable because it handicapped the plaintiffs' ability to investigate claims while allowing the employer to learn how to better arbitrate future claims); *Davis v. O'Melveny & Myers*, 485 F.3d 1066, 1078-79 (9th Cir. 2007) (finding unconscionable a confidentiality clause that prevented employee-claimants from contacting other employees to assist in arbitration), overruled on other grounds by *Ferguson v. Corinthian Colls., Inc.*, 733 F.3d 928, 933-34 (9th Cir. 2013); *Ting v. AT&T*, 319 F.3d 1126, 1151-52 (9th Cir. 2003) (holding that the district court had not erred in finding a confidentiality provision unconscionable because AT&T had "placed itself in a far superior legal posture by ensuring that none of its potential opponents have access to precedent while, at the same time, AT&T accumulates a wealth of knowledge").] The *Grabowski* court found the same confidentiality provision at issue here to be substantively unconscionable. 817 F. Supp. 2d at 1176-77. [*Poublon v. C.H. Robinson Co.*, 2015 U.S. Dist. LEXIS 6881, 16 (C.D. Cal. Jan. 12, 2015).]

A unilateral modification provision in an adhesive contract was unconscionable because it "proscribe[d] an employee's ability to consider and negotiate the terms of her contract." [*Ramirez-Baker v. Beazer Homes, Inc.*, 636 F. Supp. 2d 1008, 1022 (E.D. Cal. 2008); Melez Decl. ¶ 9.] It has been held that

**PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO COMPEL ARBITRATION AND STAY PROCEEDINGS**

*Melez v Kaiser, et al.*                      2:14-cv-08772-CAS-VBK

unilateral changes by the employer provide no meaningful opportunity to negotiate the terms of the agreement, and thus, no agreement by the employee to submit to the new terms of the agreement. [*Id.*, (citing *Ingle v. Circuit City Stores*, 328 F.3d 1165, 1179 (9th Cir. 2003).]

        4.     Costs of DRP Are Uncertain

According to the terms of the DRP, "The arbitrator shall apply the substantive applicable law including but not limited to the law as it relates to time limitations on when claims must be filed, and may award any remedy authorized by law, including attorney's fees and costs that are authorized by statute.

Defendant, in a belated attempt to correct the failure to fully address the costs associated with the arbitrators fees, offered to pay for the cost of the arbitrator. [Sanders Decl. ¶ 5.] There is nothing in the DRP that addresses the issue of the arbitrator's fees. It is too late to modify the substantively unconscionable failure to allocate the cost of the arbitrator to Defendants.

IV.    ARBITRATION AGREEMENT IS BOTH PROCEDURALLY AND SUBSTANTIVELY UNCONSCIONABLE

State law standards govern the "unconscionability" defense. [See *Doctor's Assocs., Inc. v. Casarotto* (1996) 517 US 681, 687, 116 S.Ct. 1652, 1656; *Ferguson v. Countrywide Credit Indus., Inc.* (9th Cir. 2002) 298 F3d 778, 782 (applying Calif. law).]

Melez was not given the opportunity to negotiate the terms of the Arbitration Agreement. It was "take it or leave it"; sign the agreement, or be out of a job. Forced waiver of the right to pursue her claim in a judicial forum is procedural unconscionablity. Defendants knew Plaintiff was not in a position to change jobs due to both her financial and personal situation. [Melez Decl. ¶¶ 8-9.]

The Armendariz requirements for essential fairness apply to claims involving the enforcement of rights under any statute enacted "for a public reason" and also to nonstatutory public policy claims. [See *Armendariz v. Foundation*

*Health Psychcare Services, Inc.* (2000) 24 C4th 83, 103–104, 99 CR2d 745, 759–760 - arbitration agreement enforceable only to extent arbitration preserves substantive protections and remedies afforded by FEHA; *Little v. Auto Stiegler, Inc.* (2003) 29 C4th 1064, 1076, 130 CR2d 892, 901–902 - *Armendariz* "essential fairness" requirements applied to nonstatutory public policy claims (discussed at ¶ 5:155.10); *Mercuro v. Sup.Ct. (Countrywide Secur. Corp.)* (2002) 96 CA4th 167, 180, 116 CR2d 671, 680 - *Armendariz* requirements applied to employee's claims under FEHA.]

Wrongful termination in violation of public policy involves essential fairness.

## V. ILLEGAL PROVISIONS CANNOT BE SEVERED

Defendants' arbitration agreement is both procedurally and substantively unconscionable. Given that, the next step is a determination as to whether offending provisions can be severed from the agreement. If those provisions cannot be severed, then the arbitration agreement must be found void in its entirety. [*Fitz*, supra, 118 Cal.App.4th at 726.]

Unlawful arbitration provisions include: (i) a limitation on discovery that does not provide the weaker party with sufficient opportunity to vindicate her claims, (ii) a lack of mutuality whereby the stronger party has the sole and absolute discretion to alter, amend, modify, or revoke the Arbitration Agreement to suit its own interests, and (iii) acceptance of the Arbitration Agreement as a condition of employment. "These defects indicate a systematic effort to impose arbitration on an employee[,] not . . . as an alternative to litigation, but as an inferior forum that works to the employer's advantage." [*Fitz, Id.* at 727 (quoting *Armendariz*, supra, 24 Cal.4th at 124.]

As in *Fitz*, the offending provisions cannot be severed without the Court in effect rewriting the Arbitration Agreement. Replacing the Agreement's limitations on discovery with the AAA Rules would be, in effect, rewriting the agreement.

-15-

**PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO COMPEL ARBITRATION AND STAY PROCEEDINGS**

*Melez v Kaiser, et al.*                                             2:14-cv-08772-CAS-VBK

[*Fitz*, supra, 118 Cal.App.4th at 727.] Courts cannot cure unconscionable arbitration agreements by reformation or augmentation. [*Id.* (citing *Armendariz*, supra, 24 Cal.4th at 125.] "The only way a Court can cure a contract's illegality is through severance or restriction. If the taint of illegality cannot be removed by those means, the Court must void the entire agreement." [*Fitz*, supra, 118 Cal.App.4th at 727 (quoting *Abramson*, supra, 115 Cal.App.4th at 660).]

Here, the taint of illegality cannot be removed because "excising the offending provisions of the [Arbitration Agreement] would not be consistent with the reasons for severing objectionable terms as identified by the California Supreme Court. Those reasons include: (1) "conserve[ing] a contractual relationship if to do so would not be condoning an illegal scheme" and (2) "preven[ting] parties from gaining undeserved benefit or suffering undeserved detriment as a result of voiding the entire agreement." [*Fitz*, supra, 118 Cal.App.4th at 727 (citing *Armendariz*, supra, 24 Cal.4th at 123-124.] And just as in *Fitz*, "[n]ow that the parties' employment relationship has ended, the first reason does not apply." [*Fitz*, supra, 118 Cal.App.4th at 727 (quoting *Abramson*, supra, 115 Cal.App.4th at 667) ("[T]here obviously is no contractual relationship to preserve.").] But "[m]ore importantly, to allow arbitration of [Melez's] claims would permit [Defendants] to benefit from the unconscionable agreement it imposed on her. An employer will not be deterred from routinely inserting such a deliberately illegal clause into the arbitration agreements it mandates for its employees if it knows that the worse penalty for such illegality is the severance of the clause after the employee has litigated the matter. In that sense, the enforcement of a form arbitration agreement containing such a clause drafted in bad faith would be condoning, or at least not discouraging, an illegal scheme, and severance would be disfavored unless it were for some other reason in the interests of justice. [Citation.]' " [*Fitz*, supra, 118 Cal.App.4th at 727-728 (citing *Armendariz*, supra, 24 Cal.4th at 124-125.]

Based on the pervasiveness of the offending provisions, they cannot be severed from the DRP.

## VI. CONCLUSION

For all the foregoing reasons, Defendants' motion to compel arbitration should be denied. Should the Court grant Defendants' Motion to Compel and refers this matter to arbitration, Plaintiff respectfully requests a stay of proceedings. [9 U.S.C.S. §§ 3 and 4 of the Federal Arbitration Act.]

Respectfully submitted,

/s/ Olivia Sanders
Olivia Sanders, Attorney for Plaintiff
Kathleen A. Melez

**PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO COMPEL ARBITRATION AND STAY PROCEEDINGS**

*Melez v Kaiser, et al.*                                                   2:14-cv-08772-CAS-VBK